UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:04CR00662 HEA |
| | ) |
| CORY BRADLEY, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Magistrate Judge Medler's Order and Recommendation that Defendant Cory Bradley's Motion to Suppress Evidence, [#16] be denied. Defendant Bradley has filed written objections to the Report and Recommendation. The Government have not filed objections. Pursuant to 28 U.S.C. § 636, the Court will conduct a *de novo* review of those portions of the Report and Recommendation to which Defendant Bradley objects.

### **Findings of Fact**

On August 29, 2004, at approximately 1:15 A.M., Chris Omerod, an on-duty police officer with the St. Louis County Police Department, observed a white vehicle without its headlights on heading South on Lucas and Hunt Road. Officer Omerod then pulled the vehicle over in the parking lot of an apartment complex. Omerod

approached the vehicle and spoke with the driver, Ms. Hogan. Defendant Bradley was seated in the front passenger seat. When asked for her driver's license, Ms. Hogan, indicated that she only possessed a driver's permit. Omerod asked Hogan to exit the car so he could obtain more information about her when he noticed Defendant Bradley leaning over and making movements on the floorboards of the car with his hands. Defendant was asked whether he had any identification on him, and he said he did not. Another officer had reported to the scene to assist Omerod and remained with Ms. Hogan while Omerod responded to the passenger side of the car. After Omerod made his way to the passenger side, he asked Defendant to exit the car. Omerod asked Defendant whether he had anything illegal on him, and Defendant replied "I have nothing on me–go ahead and check." Officer Omerod then performed a pat-down of Defendant in response to the statement and for his own protection.

During the pat-down, Omerod testified that he felt a plastic baggie in Defendant's front pants pocket and asked Defendant what it was. Defendant replied that it was nothing. Omerod then observed Defendant looking over his right shoulder toward the floorboards of the car and shined his flashlight on the floorboard to observe the clearly visible handle of a gun. Omerod then attempted to handcuff Defendant for his own safety due to Defendant's proximity to the gun. At this time, Defendant was not under arrest, but was being briefly detained so that an investigation could be

conducted safely. Defendant resisted the detention and pushed Officer Omerod back. A struggle ensued between Defendant and both officers until Omerod placed Defendant under arrest for assaulting a police officer. Defendant then attempted to escape by running away, but the officers gave chase, yelling "stop" and "you are under arrest." Omerod finally stopped Defendant by deploying his taser. Omerod testified that Defendant unsuccessfully attempted to reach into his pocket after he was stopped, but officers handcuffed him and returned him to the patrol car.

Officer Omerod performed a routine check of Defendant's record and discovered two outstanding warrants and a felony conviction. Omerod testified that as a matter of procedure, he would have checked Defendant's record even if Defendant had not assaulted him or attempted to escape.[1] Defendant was searched incident to the arrest, and narcotics were found in Defendant's front pants pocket. Omerod also seized the gun from the floorboard of the car. The car could not be released to Ms. Hogan because she was not a licensed driver, so a tow truck was requested and an inventory of the car was performed pursuant to policy.

## Objections to Conclusions of Law

Defendant Bradley objects to Judge Medler's finding that at the time Officer

---

[1] Omerod inevitably would have discovered the warrants, arrested and searched Defendant, and discovered the narcotics in Defendant's front pocket.

Omerod attempted to handcuff Defendant Bradley, Defendant was not under arrest. Defendant contends that Judge Medler's reliance on *United States v. Cummings,* for the premise that Omerod's detention of Defendant was permissible, is misplaced. 920 F.2d 498 (8th Cir. 1990), *cert. denied* 502 U.S. 962 (1991).

In *Cummings,* the vehicle in which defendants were riding was stopped by police for a traffic violation. After the stop, defendants behaved suspiciously and provided inconsistent information to the police. Defendants were separated so that a limited search could be conducted. Officers looked inside the vehicle with a flashlight and saw a clear plastic bag containing what appeared to be marijuana on the floor behind the passenger's seat. Officers placed defendants under arrest and called for a tow truck to remove the car. An inventory search of the car was conducted and officers discovered a duffel bag containing marijuana and cocaine, a shaving kit with U.S. currency, a Crown Royal bag containing more drugs and a loaded Tech-9 semi-automatic pistol. *Id.* at 500.

The Court in *Cummings* noted that "given the lawfulness of the initial stop, the question is whether the resulting detention was 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* at 502 (citing *Terry v. Ohio,* 392 U.S. 1, 20 (1968)). The Court held that after stopping defendants' car for the traffic violation, the circumstances and unusual behavior of defendants led

officers to reasonably conclude in light of their experience that criminal activity may have been afoot. *Id.* (citing *Terry,* 392 U.S. at 30). The Court further held that the search of defendants' car was justified by the limited protective search doctrine. *Id.* (citing *Michigan v. Long,* 463 U.S. 1032 (1983)).

Moreover, in *United States v. Willis*, 967 F.2d 1220, 1224 (8th Cir. 1992), the Eighth Circuit held that "[t]he scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case . . . an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* (citing *Florida v. Royer,* 460 U.S. 491, 500 (1983)). During an investigative stop, officers my check for weapons and may take any additional steps "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 469 U.S. 221, 235 (1985).

Here, there was probable cause to stop the vehicle driven by Ms. Hogan, based on her failure to have the vehicle's headlights on during hours of darkness. The suspicious behavior of Defendant Bradley in making movements with his hands on the floorboards of the car provided Officer Omerod with reasonable and articulable reason to detain Defendant and conduct a limited search. Once Omerod observed what he

clearly recognized as the handle of a gun, his attempt to handcuff Defendant was permissible and reasonably necessary for his own safety and the safety of others and to maintain the status quo during the course of the stop. Defendant was *not* under arrest, but was being detained briefly so that officers could conduct a limited search of the vehicle safely. Defendant, however, was never handcuffed at that time, since, instead, he elected to assault Officer Omerod and attempt to flee. As part of normal procedure, Officer Omerod would have run a check of Defendant's record even if Defendant had not assaulted him, and therefore, Defendant's warrants would have been discovered and Defendant would have been arrested anyway.

The Court finds that the officers' investigation was reasonably related to the traffic stop in light of the particular facts and circumstances of this case, the detention of Defendant was permissible and reasonably necessary, and the narcotics and gun would have been discovered anyway, since Defendant would have been arrested for his outstanding warrants, and an inventory of the car would have been conducted because there was no legitimate driver to whom it could have been released. The Court therefore adopts Judge Medler's well-reasoned and well considered Report and Recommendation in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bradley's Motion to Suppress

Evidence, [#16], is denied;

Dated this 19th day of May, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE